UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAIROS MANFORD PRIVATE EQUITY FUND I L.P.,

Petitioner,

-v-

ZHENG XU,

Respondent.

25 Civ. 5866 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

Petitioner Kairos Manford Private Equity Fund I L.P. ("Kairos") seeks to confirm a May 9, 2025 arbitral award against Respondent Zheng Xu. For the reasons explained below, the Court grants Kairos's petition to confirm.

## I. Background

Kairos is a British Virgin Islands limited partnership formed for the purpose of investing in Missfresh Limited ("Missfresh"), a China-based online grocery retailer. Dkt. 10 ("Cordero Decl."), Exh. 2 ("Partial Final Award") at 2-3. Xu founded Missfresh in 2015 and at all relevant times served as its Chief Executive Officer and Chairman. *Id.* at 2.

In early 2021, Missfresh planned an initial public offering ("IPO") of 21 million American Depositary Shares ("ADS"). *Id.* at 3. At a May 26, 2021 investor presentation in advance of Missfresh's IPO, it was represented to Kairos that Missfresh was valued at nearly $12 billion. *Id.* Based on this valuation, Kairos purchased over $53 million in Missfresh Series F shares, which would automatically convert to Missfresh common shares upon the IPO. *Id.* But when Missfresh

went public on or about June 25, 2021, it was valued at only $3 billion, and within weeks it was trading at less than $2 billion. *Id.*

On or about August 18, 2021, Kairos and Xu entered into a Put Option Agreement ("POA") to mitigate Kairos's potential losses from its investment in Missfresh. Cordero Decl., Exh. 3 ("POA"); Partial Final Award at 3. As relevant here, the POA provides that if, prior to December 27, 2023, the closing sale price of the ADS reflected a Missfresh market capitalization of less than $700 million for 120 consecutive trading days, Kairos had the right to exercise a "Stockless Exercise Right" by delivering to Xu a notice of that election. POA §§ 1(a), 2, 5(a); Partial Final Award at 3. Upon receipt of such notice, Xu or a designee must pay Kairos an amount calculated pursuant to the terms of the POA within ninety trading days. POA § 5(c); Partial Final Award at 4.

The POA also contained an agreement to arbitrate any disputes arising out of the POA. Specifically, the arbitration provision provides:

> This Agreement shall be governed and construed in accordance with the laws of the State of New York, United States of America, without regard to any principles of conflict of laws. Any controversy, dispute or claim arising out of or relating to this Agreement, or the breach, interpretation, or enforcement of this Agreement, shall be settled by binding arbitration administered by the International Center for Dispute Resolution ("ICDR") under its International Arbitration Rules . . . . The place of the arbitration shall be New York, New York, United States of America. . . . Any application for confirmation, enforcement or vacatur of the award shall be governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Judgment on the award may be rendered by any court having jurisdiction thereof.

POA § 17.

On or about August 9, 2022, Kairos delivered to Xu a notice exercising its Stockless Exercise Right as to 3,279,690 Put Shares. Partial Final Award at 4. Xu acknowledged receipt of the notice on September 6, 2022, and by letter dated September 16, 2022, he confirmed that the amount payable upon Kairos's exercise of the Stockless Exercise Right was $3,598,376, that this

amount did not exceed the POA's payment cap, and that it would be paid to Kairos within ninety trading days of Xu's receipt of the notice. *Id.* at 4-5. But notwithstanding this assurance, Xu failed to pay Kairos pursuant to the POA. *Id.* at 5; Dkt. 1 ("Petition") ¶ 3.

On May 24, 2024, Kairos filed with the ICDR a Demand for Arbitration and Statement of Claim seeking (1) $3,598,376 in monetary damages; (2) pre-award interest calculated thereon at nine percent per annum from January 13, 2023; (3) reasonable attorneys' fees as the prevailing party pursuant to Section 19 of the POA; and (4) arbitration costs, including ICDR administrative fees and arbitrator compensation. Partial Final Award at 1-2. On or about July 11, 2024, Xu, represented by counsel, filed an answer in which he denied the allegations in the Statement of Claim, asserted affirmative defenses, and requested dismissal. *Id.* at 2. The parties subsequently selected an arbitrator in accordance with the ICDR's International Arbitration Rules, conducted an evidentiary hearing, and submitted post-hearing briefs. *Id.*

On March 6, 2025, the arbitrator issued a Partial Final Award, which the ICDR delivered to the parties the following day. *Id.* at 12; Cordero Decl. ¶ 3. The Partial Final Award found Xu liable for breach of contract and awarded Kairos the principal amount of $3,598,376, plus pre-award interest at a rate of nine percent through March 31, 2025, for an additional $392,173.69. Partial Final Award at 9-10, 12. The arbitrator further determined that Kairos, as the prevailing party, was entitled under Section 19 of the POA and Article 37 of the ICDR Rules to recover its reasonable attorneys' fees and arbitration costs, directed that ICDR administrative fees and arbitrator compensation be borne entirely by Xu, and set a schedule for Kairos's fee application and Xu's opposition to such an application. *Id.* at 10-12.

Kairos thereafter applied for attorneys' fees and Xu opposed that application. The arbitrator ultimately granted Kairos's fee application but concluded that a twenty percent reduction

of the fees sought was warranted. Cordero Decl., Exh. 1 ("Final Award") at 4-5. Thus, the arbitrator's Final Award, which was issued on May 8, 2025 and delivered to the parties the next day, directed that (1) Xu pay Kairos the awarded principal amount of $3,598,376, plus interest of $392,173.69, for a total of $3,990,549.69; (2) Xu pay Kairos attorneys' fees and expenses of $160,328.00; and (3) Xu reimburse Kairos $34,775.00 in fees and compensation it had previously incurred. *Id.* at 5. Altogether, Xu was directed to pay Kairos $4,185,652.69. *Id.*

Xu failed to pay the arbitrator's Final Award, Petition ¶ 3, so on July 17, 2025, Kairos petitioned this Court to confirm the Final Award. Dkt. 1. The next day, Kairos mailed a copy of the Petition via Federal Express to an address associated with Xu in Beijing, China. *See* Dkt. 6. On August 12, 2025, the Court directed Kairos to file and serve upon Xu any additional materials in support of its Petition by September 2, 2025. Dkt. 8. Kairos timely submitted such supplemental materials and served them on Xu, together with the Court's August 12, 2025 Order. Dkts. 9-12. On September 23, 2025, Xu appeared in this action and filed a brief in opposition to the Petition. Dkts. 13, 14 ("Opposition"). Kairos filed a reply in support of its Petition on October 7, 2025. Dkt. 16 ("Reply").

## II. Discussion

### A. Service of Process

Xu argues that the Petition must be dismissed because Kairos has not effectuated proper service under Federal Rule of Civil Procedure 4. In particular, Rule 4(f)(3) provides that an individual "not within any judicial district of the United States" must be served by "means not prohibited by international agreement." Kairos seeks to serve Xu in China, which is a signatory to an international agreement "commonly referred to as the 'Hague Service Convention.'" *Smart Study Co., Ltd. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 166 (2d Cir. 2025). The Hague Service Convention, in turn, permits service on an individual in China only through

submission of the papers to China's central authority. Here, however, Kairos has purported to serve Xu via Federal Express mail, Dkt. 6—a method of service not valid under the Hague Convention.

The Court rejects Xu's challenge. Section 17 of the POA—the same provision containing the parties' agreement to arbitrate—provides:

> Service of process in any [] arbitration, litigation or other proceeding may be made by FedEx or similar express international courier, and the same shall constitute valid personal service for all purposes, each Party hereby waiving personal service by other means.

POA § 17. This proceeding is a "litigation" that falls within that provision's reach, so Kairos complied with the procedure for service under the POA when it mailed Xu the Petition via Federal Express.

Xu's consent to service in the POA is controlling because it has long been "settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964); *see also, e.g.*, *Terra Nova Trading Inc. v. Cashew Indus. W. Afr.*, 732 F. Supp. 3d 363, 368 (D.N.J. 2024) ("It is well established . . . that the procedures described in Rule 4 need not be followed where the parties agree to another form of service."). Indeed, courts have enforced contractual service provisions notwithstanding that the agreed-upon method of service would otherwise be impermissible under the Hague Convention. *See, e.g.*, *Ninety-Five Madison Co., L.P. v. Vitra Int'l AG*, No. 19 Civ. 1745 (GBD), 2020 WL 1503640, at *4 (S.D.N.Y. Mar. 30, 2020) ("[S]ervice via registered mail was proper because Defendant consented to such service and waived its right to service otherwise."); *Masimo Corp. v. Mindray DS USA Inc.*, No. 12-02206-CJC, 2013 WL 12131723, at *3 (C.D. Cal. Mar. 18, 2013) ("The Court sees no reason why parties may not waive by contract the service requirements of the

Hague Convention, especially given that parties are generally free to agree to alternative methods of service.").

This result makes sense. The Hague Convention, by its own terms, applies only "where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, art. 1. And as the Supreme Court has clarified, "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988). But as just explained, service pursuant to the strictures of Rule 4 is not a required part of service where the parties have validly agreed in advance to an alternative method of service. *See Nat'l Equip. Rental*, 375 U.S. at 315-16. So in such cases, the Hague Convention does not even apply in the first place.

The decisions on which Xu relies are not to the contrary. *See* Opposition at 3-4, 6. Each involved a plaintiff who sought to serve a defendant located in China by mail or email *in the absence* of any contractual agreement authorizing that method of service. *See Spin Master, Ltd. v. Aomore-US*, No. 23 Civ. 7099 (DEH), 2024 WL 3030405, at *5-8 (S.D.N.Y. June 17, 2024); *Safavieh Int'l, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*, No. 23 Civ. 3960 (CM), 2023 WL 3977505, at *2 (S.D.N.Y. June 13, 2023); *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1390-96 (S.D.N.Y. 2022); *Convergen Energy LLC v. Brooks*, No. 20 Civ. 3746 (LJL), 2020 WL 4038353, at *7-9 (S.D.N.Y. July 17, 2020); *Zhang v. Baidu.com, Inc.*, 932 F. Supp. 2d 561, 566-68 (S.D.N.Y. 2013). Accordingly, the Court holds that Xu was properly served when Kairos mailed the Petition to him by Federal Express in accordance with Section 17 of the POA.

## B. Award Confirmation

### 1. Legal Standard

Kairos's petition to confirm the arbitrator's Final Award is brought pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which is

commonly referred to as the "New York Convention." *See Drip Cap., Inc. v. M/S. Goodwill Apparels*, 665 F. Supp. 3d 511, 514 (S.D.N.Y. 2023). Article I of the New York Convention applies "to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought," in addition "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention, art. I(1). An award rendered in the United States falls within the latter category—and thus under the New York Convention—where it "involv[es] parties domiciled or having their principal place of business outside the enforcing jurisdiction." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983); *accord Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997).

Title 9, United States Code, Section 203 confers "federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the [New York] Convention." *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012). A party may seek an order from a district court confirming an arbitral award that falls under the New York Convention within three years of the date of the award. 9 U.S.C. § 207. An arbitration agreement falls within the scope of the New York Convention if four requirements are met: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999)).

The Second Circuit has instructed that "[c]onfirmation under the [New York] Convention is a summary proceeding in nature, which is not intended to involve complex factual

determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (citing *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)). "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. "Article V of the [New York] Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis*, 403 F.3d at 90.

Specifically, the New York Convention provides that recognition and enforcement of an award "may be refused" only if the party against whom the award is invoked "furnishes . . . proof" that: (1) the parties to the arbitration agreement were "under some incapacity" or the agreement "is not valid" under the law designated by the parties, or, in the event they have not designated any, the law of the country where the award was made; (2) the party against whom the award is invoked "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case"; (3) "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration"; (4) "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place"; or (5) "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." New York Convention, art. V. Recognition and enforcement may also be refused if "the competent authority in the country where recognition and enforcement is sought finds that" (6) "[t]he subject matter of the difference is not capable of settlement by arbitration

under the law of that country" or (7) "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." *Id.* The burden of establishing one of these defenses is a "heavy one, as 'the showing required to avoid summary confirma[tion] is high.'" *Encyclopaedia Universalis*, 403 F.3d at 90 (quoting *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23).

"When confirming an award, a district judge 'does little more than give the award the force of a court order.'" *Temsa Ulasim Araclari Sanayi ve Ticaret A.S. v. CH Bus Sales, LLC*, No. 22 Civ. 492 (JPC), 2022 WL 3974437, at *4 (S.D.N.Y. Sept. 1, 2022) (quoting *Zeiler*, 500 F.3d at 169). Indeed, the New York Convention "does not sanction second-guessing the arbitrator's construction of the parties' agreement." *Thai-Lao Lignite (Thai.) Co. Ltd. v. Gov't of Lao People's Democratic Republic*, 492 F. App'x 150, 152 (2d Cir. 2012) (summary order).

### 2. Analysis

Xu's opposition to the Petition is based solely on his argument that Kairos has not effectuated proper service. *See* Opposition at 1 ("[Respondent] respectfully requests that the Court deny the Petition because [Petitioner] has not yet completed service of process pursuant to the Hague Convention."). He does not present any arguments challenging confirmation if service is proper. Nonetheless, even when a party does not oppose the merits of a petition to confirm an arbitral award, "a court must still ensure that judgment is proper as a matter of law under the undisputed facts." *CH Bus Sales*, 2022 WL 3974437, at *4.

#### a. Jurisdiction

This Court has the authority to enforce the arbitrator's Final Award under the New York Convention. The application is timely, having been brought within three years of the arbitrator's May 2025 decision. *See* 9 U.S.C. § 207. And the POA satisfies the four jurisdictional requirements of the treaty. *See Dumitru*, 732 F. Supp. 2d at 335; 9 U.S.C. § 202. It (1) is a written agreement;

(2) provides for arbitration in the United States, which is a signatory of the New York Convention, POA § 17; (3) covers a subject matter that is commercial in nature; and (4) is a non-domestic agreement under 9 U.S.C. § 202 because the relationship between Kairos, a limited partnership organized under the laws of the British Virgin Islands, Petition ¶ 5, and Xu, the founder of a China-based company, *id.* ¶ 6, is not entirely domestic in scope. *See Zeiler*, 500 F.3d at 164 (holding that the New York Convention applied to arbitration between Israeli parties and United States parties because "[t]he commercial transactions decided in the arbitration have a clear international character"); *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19; *Bergesen*, 710 F.2d at 932.

**b. Merits**

Kairos also has established that there is no genuine issue of material fact precluding judgment in its favor. The arbitrator's Final Award adhered to the terms of the POA and was within the bounds of the arbitrator's authority. The POA provided for arbitration of "[a]ny controversy, dispute or claim arising out of or relating to" the POA before a single arbitrator of the ICDR, seated in New York and applying New York law. POA § 17. Kairos initiated arbitration in accordance with that provision by filing its Demand for Arbitration and Statement of Claim with the ICDR on May 24, 2024, after which the parties selected the sole arbitrator in accordance with the agreed-upon ICDR rules. Partial Final Award at 1-2; Petition ¶¶ 24, 28. Xu was given notice of the arbitration and of the arbitrator's appointment, was represented by counsel throughout, and was afforded a full opportunity to present his case, including through live testimony at an evidentiary hearing. Petition ¶¶ 27-31, 39-40. After "duly hear[ing] the proofs and allegations" of the parties, Partial Final Award at 1, the arbitrator concluded that Xu entered into the POA in his personal capacity and breached that agreement by failing to pay the amount due upon Kairos's exercise of its Stockless Exercise Right, and therefore awarded Kairos damages, pre-award interest, attorneys' fees, and arbitration costs—relief expressly contemplated by the POA and the

ICDR Rules. *Id.* at 7-12; Final Award at 5-6; *see* POA §§ 17, 19; Partial Final Award at 10-11 (discussing ICDR Rules concerning attorneys' fees, ICDR fees, and arbitrator compensation).

In sum, "nothing suggests that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Earth Constr. Corp.*, No. 21 Civ. 1443 (JPC), 2021 WL 4975690, at *3 (S.D.N.Y. Oct. 25, 2021) (internal quotation marks omitted); *see also id.* ("Although Petitioners have not presented this Court with copies of all the materials on which the arbitrator relied, there is no reason to doubt the arbitrator's interpretation of those materials." (internal quotation marks omitted)). The Court therefore grants Kairos's application for confirmation of the Final Award.

**c. Interest**

Kairos also seeks prejudgment interest at a rate of nine percent per annum from May 9, 2025, the date the Final Award was delivered to the parties. Petition at 9-10. There is generally a "presumption in favor of pre-judgment interest" in connection with actions to confirm arbitral awards. *Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984). Here, because the POA is governed by New York law, the Court grants Kairos's request and awards prejudgment interest at New York's statutory rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004. Postjudgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961, from the date judgment is entered until payment is made in full.

## III. Conclusion

For the above reasons, the Petition is granted and the Court confirms the Final Award, which incorporates the Partial Final Award, in its entirety. The Clerk of Court is respectfully directed to enter judgment in favor of Petitioner and against Respondent in the amount of $4,185,652.69, together with prejudgment interest at a rate of nine percent per annum from May 9, 2025, to the date that judgment is entered. Postjudgment interest shall accrue at the statutory

rate pursuant to 28 U.S.C. § 1961 from the date that judgment is entered until payment is made in full. The Clerk of Court also is respectfully directed to close this case.

SO ORDERED.

Dated: August 15, 2026
New York, New York

JOHN P. CRONAN
United States District Judge